Eric Benitez AMAYA, Israel Amaya Benitez and Jose Benitez, Appellants,

v.

The STATE of Texas, Appellee.

Nos. 01–83–0382–CR, 01–83–0383–CR and 01–83–0384–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 16, 1984.

Stanley G. Schneider, Houston, for appellants.

Winston E. Cochran, Jr., Houston, for appellee.

Before JACK SMITH, BASS and COHEN, JJ.

## OPINION

COHEN, Justice.

The appellants, three brothers hereafter referred to by their first names, were convicted by a jury of aggravated rape, and the jury assessed punishment at 40 years imprisonment for Jose and Israel and 35 years imprisonment for Eric.

The three appellants were represented by one attorney at trial, and all are represented by a different attorney on appeal. The appellants contend they were denied their Sixth Amendment right to effective assistance of counsel because there was a conflict of interest which adversely affected their trial attorney's performance. Because of these contentions, a detailed statement of the facts is necessary.

The complainant testified that on the night of February 12, 1983, she went to a bar to play pool and to visit some friends. She testified that she left the bar at approximately 1:30 a.m., on February 13, 1983, and began walking home, which was approximately five or six blocks away, when two Hispanic males pulled up to her in a car. After offering her a ride, which she declined, one of the men put a gun to her head, and forced her into the car, a small 2-door sub-compact. She identified the two men in the car as Jose and Israel. They took her to an apartment complex, at which time she noticed another car following them. She was taken to an apartment occupied by approximately ten men, where she was raped, first by Jose, then by Eric, and then by Israel. She then escaped from the apartment and immediately called the police.

When the police arrived, the complainant first mistakenly pointed out apartment number 64, and then apartment number 65, which the police entered at approximately 4:00 a.m. The police discovered a knife and a gun inside the apartment, both later identified by the complainant as weapons used in the rape. The knife was found under Israel's pillow, and was claimed by him at trial. Jose, according to the complainant, had held the gun at times during the episode, and he admitted owning the gun. The police found the complainant's purse on top of a carport directly outside one of the appellants' bedroom. The purse had been cut with a knife.

At trial, the complainant admitted to two prior convictions for prostitution, one conviction for lewd dancing, and another conviction for public intoxication. However,

she denied ever agreeing to sexual intercourse with the appellants or anyone else on the night in question.

The appellants all testified that they never saw the complainant until she arrived at the apartment with the police at approximately 4:00 a.m.

All three appellants presented alibi witnesses whose testimony placed them elsewhere until at least 2:00 to 2:30 a.m., which would have made it impossible for Jose and Israel to have abducted the victim. Jose and Eric and their witnesses testified that they were at the El Caballero Club until 2:00 a.m. Israel and his witnesses testified that he was at the home of another brother until 2:00 to 2:30 a.m. One of the witnesses to Israel's alibi was Blanca Cruz. She testified that all three appellants were at dinner at the fourth brother's house until approximately 2 a.m. This testimony supported Israel's alibi; however, it conflicted with the alibis of Jose and Eric. Soon after Cruz made this statement, the defense attorney terminated his direct examination of her. The State emphasized the conflict during its cross-examination, at which time Ms. Cruz clarified and repeated her testimony that all three appellants were with her at the fourth brother's house. The defense attorney conducted no redirect examination of Ms. Cruz.

The conflict thus created was that if Ms. Cruz was telling the truth, then Israel and his witnesses also were telling the truth about Israel's alibi, but Jose and Eric and their witnesses were lying about their alibi. The defense attorney could not have attacked Cruz's testimony that Jose and Eric also were present without exploiting the conflict to the detriment of all three defendants. He could not let the testimony stand unchallenged without it impeaching the account of Jose, Eric and their witnesses.

The prosecutor exploited the conflict by arguing to the jury that the alibi was false,

and that the defendants failed to let Ms. Cruz know what story they would tell.

This is not the only conflict apparent from this record. All of the defendants sought to leave the jury with the impression that they did not drive, did not own cars, and did not have access to a car on February 13, 1983, the date of the offense. Jose testified that he did not own a car and did not know how to drive. Cristobal Guevara and Maria Morales testified that none of the defendants had a car and that they never had known any of them to drive a car. Horacio Benitez, a brother of the appellants, testified that his brothers did not own a car and that he did not lend them his car on that night. This testimony, if believed by the jury, would have made it unlikely that the appellants used a car to abduct the victim. However, on direct examination of Eric, the defense attorney brought out that he had been previously arrested in 1980 for driving while intoxicated. The prosecutor, on cross-examination, pointed out the conflict between this fact and defense testimony that none of the appellants drove or owned cars. The State also mentioned on cross-examination at least one other arrest of Eric, possibly a second DWI arrest in 1981, and a conviction, which Eric denied, for giving a false name in court. No proof of these arrests or convictions was made at the punishment stage, except for one misdemeanor DWI, which occurred and resulted in conviction in 1981. No arrests or conviction of Jose or Israel for any offense was alleged or proved. Eric's prior criminal history for at least one offense involving the use of a motor vehicle was thus admitted at the guilt-innocence stage and was used by the State to impeach the claim of all the defendants that they did not have access to automobiles.

We note that this was a prosecution of three brothers for acting together to commit the same offense against the same victim at the same time. They were tried jointly on a jury charge authorizing their conviction as parties to the offense,[1] Tex.

---

1. The charge in our transcripts contains no instruction on parties. However, the prosecutor stated during jury argument, without objection, that the charge contained such an instruction

Penal Code Ann., Sections 7.01–7.02, while represented by one attorney. Under these circumstances, conflicts in their defenses or criminal records in any of their backgrounds were harmful to all three. Joint representation made it impossible to try to minimize harmful effects of the conflict upon any defendant without emphasizing its harmful character upon the others.

■ The law which we must apply to these facts is clear. An actual and significant conflict of interest exists when "one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a co-defendant whom counsel is also representing." *Ferguson v. State*, 639 S.W.2d 307, 310 (Tex.Crim.App. 1982). "Once a conflict of interest is shown actually to have affected the adequacy of representation, an accused need not demonstrate prejudice in order to obtain relief." *Ex parte McCormick*, 645 S.W.2d 801, 806 (Tex.Crim.App.1983). An actual conflict which adversely affects an attorney's performance can never be harmless error. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

■ The trial court conducted a hearing on the motion for new trial, at which time the appellants were represented by their present counsel on appeal. Their trial counsel and other witnesses testified on the subject of conflict of interest. The record shows that the appellants were never warned by their trial attorney or by the court about a potential or actual conflict of interest. The defense attorney's failure to apprise the defendants of the dangers of multiple representation "breached a legal duty to his clients and violated a professional responsibility ...". *Ex parte Acosta*, 672 S.W.2d 470 (Tex.Crim.App.1984). The record contains no evidence of a knowing and intelligent waiver by the appellants of their right to a conflict-free attorney. As stated in *Gonzales v. State*, 605 S.W.2d 278, 282 (Tex.Crim.App.1980):

and explained the law of parties to the jury. Therefore, we assume that such an instruction

It follows, then, that where, as here, trial counsel compounds the breach of a legal and professional duty by failing to voice an objection to potentially conflicting interests vis-a-vis his several clients, his unwitting client has not established the constitutional predicate for his claim of ineffective assistance of counsel unless and until he can demonstrate that his counsel has represented actually conflicting interests which in turn adversely affected his lawyer's performance. *Cuyler v. Sullivan*, 446 U.S. [335] at 348–50, 100 S.Ct. [1708] at 1718–1719 [64 L.Ed.2d 333] [(1980)].

No case is more enlightening in its explanation of the harm in cases like this than *Holloway v. Arkansas*, 435 U.S. 475, 489–90, 98 S.Ct. 1173, 1181–82, 55 L.Ed.2d 426 (1978). Chief Justice Burger wrote:

Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. For example, in this case it may well have precluded defense counsel for Campbell from exploring possible pre-trial negotiations and the possibility of an agreement to testify for the prosecution, provided a lesser charge or favorable sentencing recommendation would be acceptable. Generally speaking, a conflict may also prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement in the culpability of his clients in order to minimize the culpability of one by emphasizing that of another. Examples can be readily multiplied. The mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations have effectively sealed his lips on crucial matters.... but in a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from

was contained in the charge.

doing, not only at trial but also as to possible pretrial negotiations and in the sentencing process. (Court's emphasis).

The evils cited by Chief Justice Burger in *Holloway v. Arkansas* permeate this case. For only one example, Eric was not present during the abduction party, which may have accounted for the fact that the jury gave him 35 years and gave Jose and Israel 40 years. An attorney representing Eric alone could have argued how much greater was the culpability of Israel and Jose, both of whom, unlike Eric, were also shown to have personally used deadly weapons to accomplish the crime. Although, as Chief Justice Burger has stated, examples can be readily multiplied, it is unnecessary to do so.

■ This is not a case in which we hold that the trial attorney was professionally incompetent. When an attorney's competency is attacked, it is judged by the standard of "reasonably effective assistance." *Ex parte Duffy*, 607 S.W.2d 507 (Tex.Crim. App.1980). This is not and never has been a high standard of professional performance.

> "Judicial scrutiny of counsel's performance must be highly deferential. [I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable ... [A] court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance ... Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client ... [T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, — U.S. —, 104 S.Ct. 2052, 2065–66, 80 L.Ed.2d 674 (1984).

■ Utilizing this standard, our courts have affirmed convictions despite serious errors, as long as the representation provided was, on the whole, reasonably effective. In order to justify a reversal, both the incompetence and the harm caused by it must be plainly visible from the record. *Faz v. State*, 510 S.W.2d 922 (Tex.Crim. App.1974); *Strickland v. Washington*, *supra* at 2066.

■ A conflict of interest which denies a defendant the effective assistance of counsel, is, however, an altogether different matter. Our courts, in significant contrast, have required high standards of loyalty to a client's interest, unimpeded by conflicting allegiance to the interest of any other client, and, because of the great difficulty in showing what the advocate was prevented from doing, convictions have been reversed where a conflict affecting representation was shown, without inquiring whether the error was harmless. As Chief Justice Burger has stated, such an inquiry would be "unguided speculation." *Holloway v. Arkansas*, *supra*, 435 U.S. at 491, 98 S.Ct. at 1182.

> In certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance.... Prejudice in these circumstances is so likely that case by case inquiry into prejudice is not worth the cost....
>
> One type of actual ineffectiveness claim warrants a similar, though more limited, presumption of prejudice. In *Cuyler v. Sullivan*, 446 U.S. at 345–50 [100 S.Ct. at 1716–1719], the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest

and *the ability of trial courts to make early inquiry into certain situations likely to give rise to conflicts,* see, e.g., Fed.Rule Crim.Proc. 44(c),[2] it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. Even so, the rule is not quite the *per se* rule of prejudice that exists for the Sixth Amendment claims mentioned above. Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and 'that an actual conflict of interest adversely affected his lawyer's performance.' (emphasis supplied)

*Strickland v. Washington, supra,* — U.S. at —, 104 S.Ct. at 2067 (emphasis supplied)

Such a conflict occurred here. Ground of error one is sustained.

■ ■ Trial courts should "... make early inquiry into certain situations likely to give rise to conflicts ...", *Strickland v. Washington,* id., in order to warn defendants of the predictable hazards of joint representation. Such warnings are important because, "Joint representation of conflicting interests is suspect ...", and will require reversal without harm if the conflict adversely affects the attorney's performance. *Holloway v. Arkansas, supra* 435 U.S. at 489, 491, 98 S.Ct. at 1181, 1182. The court's inquiry should assure that the defense attorney has not "breached a legal duty to his clients and violated his professional responsibility" by failing to warn them of the dangers of multiple representation. *Ex parte Acosta, supra.*

**2.** Rule 44(c) provides: "Joint Representation. Whenever two or more defendants have been jointly charged ... or have been joined for trial ..., and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel."

There are at least three significant potential conflicts of interest inherent in most cases of multiple representation. They are: 1) that a jointly represented defendant may be deprived of advantageous plea bargaining options which would be available to him if he were separately represented; 2) that a jointly represented defendant may be harmed more than would a separately represented defendant by incriminating evidence admitted against a co-defendant; specifically, a joint attorney may be unable to argue that one defendant is less guilty than the others, or that one defendant deserves less punishment than the others, whereas a separate attorney would be free to do so; and 3) that one attorney representing several defendants may be less able than a separate attorney would be to reduce harm arising from testimony by a co-defendant and his witnesses which is inconsistent with testimony of the defendant and his witnesses.

These predictable hazards are proper subjects for the court's admonishment and will cover many actual conflicts. The Supreme Court has stressed the need for "early inquiry," *Strickland v. Washington, supra,* and many conflicts will be avoided or waived if the inquiry is made when the trial judge first learns that joint representation is planned.

It is well settled that, "The defendant in a criminal prosecution for any offense may waive any rights secured him by law except the right of trial by jury in a capital felony case." Tex. Code Crim.Pro.Ann., Art. 1.14 (Vernon 1977). A defendant who

Similar steps to protect against conflicts of interest are recommended in American Bar Association's Standards Relating to the Function of the Trial Judge (Approved Draft 1972), Section 3.4(b); Code of Professional Responsibility, Ethical Consideration 5–15; American Bar Association's Standards Relating to the Defense Function Section 5(b) (Approved Draft 1971). The many authorities supporting the rule are discussed in the Notes of the Advisory Committee on Federal Rules of Criminal Procedure, *see* Fed. Rules Cr. Proc., Rule 44(c), 18 U.S.C.A.

has been properly admonished of the potential hazards of conflict of interest will be able to knowingly and intelligently waive his right to a conflict-free counsel in order to obtain the benefits which may result from joint representation. Such an admonishment and waiver may prevent reversal in cases like this one. Such steps seek "... to bring to the investigation of each offense on trial all the evidence tending to produce conviction or acquittal; to insure a fair and impartial trial; and the certain execution of the sentence of the law when declared." Tex. Code Crim.Pro.Ann., Art. 1.03 (Vernon 1977).

The judgments are reversed and the causes are remanded for new trial.