Terry Louis JONES, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–86–0262–CR.

Court of Appeals of Texas, Houston (1st Dist.).

April 16, 1987.

Will Gray, Simonton, for appellant.

John B. Holmes, Jr., Harris Co. Dist. Atty., Winston E. Cochran, Jr., Gaynelle Jones, Harris Co. Asst. Dist. Attys., Houston, for appellee.

Before WARREN, COHEN and HOYT, JJ.

## OPINION

WARREN, Justice.

A jury found the appellant guilty of the offense of aggravated robbery and, after appellant pled true to one enhancement allegation, assessed punishment at life imprisonment.

On the evening of December 28, 1985, three men assaulted and robbed the complainant, Fola Ogunmakin, a convenience store clerk. Ogunmakin identified the appellant and his co-defendants, Hoover Pugh, Jr. and Clifford Ware, as his attackers. Ogunmakin testified that the appellant struck him on the chin with a pistol; then the other two men dragged him into a stockroom where they removed his wallet and wristwatch. They removed approximately $100 from the store's cash register before leaving the store in a dark-colored Camaro.

Shortly after Ogunmakin was robbed, three men attempted to rob a Shell service station nearby. Two Shell employees testified that one of the men displayed a gun and demanded money from the cashier. The three men left without money when a customer drove into the station.

Police arrested Pugh, Ware, and the appellant shortly after the second incident was reported, and brought them to the Shell station for identification. The cashier, Nancy Ainsworth, positively identified the appellant as the man who held the gun and Pugh as one of appellant's accomplices. Christopher Journigan, the second employee, identified all three men as the would-be robbers, but testified at trial that he identified Pugh and Ware "by their clothes that they were wearing" during the robbery, and not by their features.

The three men were then taken to Ogunmakin, who identified them as the men who robbed him. Ogunmakin testified that he clearly recognized the appellant and Ware at that time, but that he identified Pugh

because of his clothes. The men were charged by indictment with the aggravated robbery of Ogunmakin.

Ainsworth and Journigan, the Shell employees, testified for the limited purpose of establishing the identity of the robbers. In addition to the testimony outlined above, both stated that they had been unable to identify the defendants in pretrial lineups several months after the attempted robbery. Ainsworth testified that she was unable to identify any of them because of changes in their appearance, i.e., added weight and different hairstyles and beards, but she was able to identify them in the courtroom. Journigan said that he had identified the wrong men in lineups because of their changes in appearance, but he was also able to identify them in the courtroom. Both Shell employees testified that prosecutors had shown them color photographs before trial of the defendants as they appeared on the night of their arrest.

At trial, the witnesses were most definite in identifying the appellant, though they inaccurately estimated his height. Ogunmakin noted that the man who pistol-whipped him stuttered; other witnesses testified that the appellant stutters. Journigan and Ogunmakin both identified the appellant as being about six feet tall; however, his penitentiary packet states that he is six feet, three inches tall.

Before trial, the appellant and his co-defendants requested that their three court-appointed attorneys withdraw from their representation, and that William E. Tise be substituted as trial counsel for all three defendants. Tise asked that each defendant be allowed to testify, in the absence of the jury, that "they understand the inherent dangers of [joint representation] and that they prefer it this way." The court complied with Tise's request.

Tise elicited the following testimony from the appellant:

Q. Mr. Jones, are you one of the three co-defendants in the case now on trial before this court?

A. Yes, I am.

Q. All right. And have I very carefully explained to you the possibility that a conflict might arise sometime during the trial which might do harm to the other two defendants if someone is—if something does occur?

A. Yes, you have.

Q. And have you indicated to me that, understanding these possible dangers, that you prefer to be tried by—defended by one attorney and all three of you tried at the same time?

A. Yes, I do.

At the trial court's suggestion, Tise then asked the following questions regarding plea negotiations:

Q. Have I informed you that the State of Texas has made an offer in this cause for, in exchange for a plea of no contest or a plea of guilty ... to recommend to the Court that the Court confine you in the Texas Department of Corrections for 13 years?

A. Yes, you have.

Q. And what was your reply to me when I made you that offer?

A. I did not accept the offer.

Q. All right. In other words, you are refusing the State's offer of 13 years in exchange for a plea of no contest or guilty?

A. Yes, I am.

. . . .

Q. Mr. Jones, have you made any counteroffer to the State of something that you would accept in exchange for a plea of guilty or no contest?

A. I wouldn't accept nothing but what I'm going through right now because I didn't do it.

The appellant's co-defendants similarly testified, stating that they, too, had refused to plead guilty in exchange for 13-year sentences. Ware acknowledged "that something may be said about one of the other defendants that may rub off on [Ware] and cause [him] to get a heavier sentence or get convicted...."

The appellant does not challenge the sufficiency of the evidence supporting his conviction. Rather, in his one point of error,

he argues that he was denied the effective assistance of counsel at trial. As his counsel puts it, the "critical issue is whether Jones waived his right to have conflict-free counsel by the charade engaged in by defense counsel and the trial judge at the outset of the proceedings."

■ A conflict of interest that actually affects the adequacy of representation requires reversal, regardless of whether prejudice is shown to have resulted from the conflict. *Cuyler v. Sullivan*, 446 U.S. 335, 349–50, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980); *Amaya v. State*, 677 S.W.2d 159, 162 (Tex.App.—Houston [1st Dist.] 1984, pet. ref'd). In cases where the effectiveness of counsel is challenged on other grounds, a showing of prejudice is required. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984). The Supreme Court has explained the distinction:

> [I]n a case of joint representation of conflicting interests, the evil ... is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process.... Thus, an inquiry into a claim of harmless error here would require, unlike most cases, unguided speculation.

*Holloway v. Arkansas*, 435 U.S. 475, 490–91, 98 S.Ct. 1173, 1182, 55 L.Ed.2d 426 (1978) (emphasis in original).

The appellant contends that his attorney's conduct of his trial was hampered by an actual conflict of interest, which was created by the witnesses' "inability" to "positively identify" his two co-defendants. The appellant argues that his trial counsel failed to contest the identification procedures, or the admissibility of the extraneous Shell station offense, because counsel's trial strategy was to emphasize the indefiniteness of the identification of Pugh and Ware as the appellant's accomplices.

■ It is unlikely that Tise could have successfully challenged either the identification procedures or the admission of the Shell offense. *See Garza v. State*, 633 S.W.2d 508, 512 (Tex.Crim.App.1982) (on-the-scene identification is not improper);

*Ransom v. State*, 503 S.W.2d 810, 813 (Tex. Crim.App.1974) (extraneous offense admissible to establish identity when proximity in time and place and similarity of offenses is established); *Hall v. State*, 466 S.W.2d 762, 764 (Tex.Crim.App.1971) (exhibition of photograph to witness several weeks after offense did not taint in-court identification based on view of robber at time of offense). The use of photographs to prepare the witnesses for trial affected the weight, not the admissibility, of the in-court identification; the record reflects that trial counsel cross-examined the witnesses on this point in an effort to impeach their identification of the defendants.

Whether these specific strategies could have succeeded is irrelevant, because the record shows that the appellant knowingly and intelligently waived his right to conflict-free counsel. "The defendant in a criminal prosecution for any offense may waive any rights secured him by law except the right of trial by jury in a capital felony case." Tex.Code Crim.P.Ann. art. 1.14 (Vernon 1977); *Amaya v. State*, 677 S.W.2d at 164.

■ The appellant, citing *United States v. Iorizzo*, 786 F.2d 52 (2d Cir.1986), suggests that the trial court should have assured that the appellant's waiver was knowing and intelligent, by (1) advising him of the dangers of joint representation, (2) determining that he understood those risks, and (3) giving him time to contemplate those risks after encouraging him to seek independent counsel. *Id.* at 59. Such an admonishment is mandatory in federal district courts of the Fifth Circuit. *United States v. Garcia*, 517 F.2d 272, 277–78 (5th Cir.1975). The federal trial judge need not "anticipate every possible detriment that might befall a defendant as the result of a conflict in a particular case," but the court must make "at least some affirmative effort ... to inform the defendant of the ways the conflict might operate ... deleteriously upon the reasoned and competent presentation of his or her defense." *United States v. White*, 706 F.2d 506, 509 (5th Cir.1983).

Although the Second and Fifth Circuits require federal district courts to conduct the inquiry suggested by appellant in all cases of joint representation, such a requirement does not apply to state courts. "Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." *Cuyler v. Sullivan*, 446 U.S. at 347, 100 S.Ct. at 1717; *Calloway v. State*, 699 S.W.2d 824, 829 (Tex.Crim.App.1985). Because it had no knowledge of any special circumstances, the trial court properly relied on the appellant's express waiver.

*Zuck v. Alabama*, 588 F.2d 436 (5th Cir. 1979), was an appeal from the denial of Zuck's federal habeas corpus petition. Although the *Zuck* court held that the state trial court need not conduct the inquiry required of federal district courts, the court stated that "if the record is silent on whether the defendant received the information required by *Garcia*, then the State must bear the burden of showing that the waiver was knowing and intelligent." *Id.* at 440. In the present case, the record is not silent; rather it shows, in its totality, that the appellant received the information required by *Garcia. See North Carolina v. Butler*, 441 U.S. 369, 374, 99 S.Ct. 1755, 1758, 60 L.Ed.2d 286 (1979) (circumstances surrounding case indicated waiver of right to counsel).

■ The appellant's testimony reflects that his attorney advised him that there were risks inherent in joint representation. The appellant affirmed that he understood these dangers, and that he preferred joint representation. The fact that the appellant was originally represented by separate counsel, but that he himself moved for the withdrawal of his original attorney, reflects his knowledge of his right to separate counsel. *Ex parte Prejean*, 625 S.W.2d 731, 733 (Tex.Crim.App.1981). Unlike the case of *United States v. Iorizzo*, 786 F.2d 52, relied on by the appellant, the trial court did not pressure the appellant to accept joint representation; nor did the court fail to inform the appellant of any particular risks that it knew pertained to his case. *Id.* at 59.

The appellant's testimony does not reflect that he was aware of "every possible detriment" that might befall him, but such a showing is not required. *United States v. White*, 706 F.2d at 509. Despite his broad allegations that a conflict existed, the appellant has not demonstrated such a particular conflict as would have required the trial court to conduct an inquiry into the details of the advice given him by counsel. *Cuyler v. Sullivan*, 446 U.S. at 347, 100 S.Ct. at 1717; *Calloway v. State*, 699 S.W.2d at 829. Neither has he shown an actual conflict that would require reversal, even in the absence of an express waiver.

■ One particular concern in cases of joint representation is that a jointly represented defendant may be harmed by incriminating evidence admitted against a co-defendant. *Amaya v. State*, 677 S.W.2d at 164. In view of the fact that the appellant was the single defendant most clearly identified at trial, this concern is not raised by the facts of this case.

■ A second concern is that a jointly represented defendant may be deprived of advantageous plea bargaining options. *Id.* By rejecting the State's offer of a 13–year sentence and consenting to a joint trial, the appellant obviously deprived himself of an advantageous option, but his choice was a voluntary one, unrelated to his attorney's joint representation of the co-defendants. His testimony demonstrates that he knowingly rejected the offer because, he contended, he was not guilty. There is no indication that the appellant was ever offered a lighter sentence if he would testify against his co-defendants. The record shows that the State's offer to each defendant was the same.

The appellant's decision to forsake separate counsel was within his sixth amendment rights, and was consistent with a defensive strategy validated by the Supreme Court, when it recognized that "[a] common defense often gives strength against a common attack." *Holloway v. Arkansas*, 435 U.S. at 482–83, 98 S.Ct. at 1177–78.

From the record, it appears that appellant stood to benefit more from joint representation and a joint trial than his co-defendants. There is no showing that the decision to represent appellant together with the two co-defendants in a joint trial, or that appellant's counsel's conduct during the joint trial amounted to ineffective representation.

The appellant's point of error is overruled.

The judgment is affirmed.