gordon 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-92-00088-CR







Frances Tarlton Gordon, a/k/a Fran Gordon, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 105,231, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING







 Following a jury trial, Francis ("Fran") Gordon and her husband, John Gordon,
were convicted for misapplication of fiduciary property of more than $10,000. See Tex. Penal
Code Ann. § 32.45 (West 1994). (1) The jury assessed the minimum punishment of two years'
confinement and a $10,000 fine. Fran Gordon appeals her conviction. We will affirm the trial
court's judgment of conviction. 



BACKGROUND


 In 1983, W.H. "Pip" Lasiter formed Best Lloyds, a Lloyds company. (2) Owners of
the company included Lasiter, president of Best Lloyds; appellant, trustee and director; and John
Gordon, vice-president, treasurer, and director. Appellant was also the sole proprietor of
Southwestern Surplus ("SWS"), a managing general agent ("MGA") formed by her in 1979. (3) 
SWS contracted to enlist agents, underwrite policies, and aid in claims adjusting for Best Lloyds. 
Under the agreement, SWS collected premiums, held them as a fiduciary, and then remitted them
to Best Lloyds after withholding its commissions.

 At first, Best Lloyds's business grew rapidly. In 1987, Best Lloyds wrote over $41
million in insurance coverage, primarily automobile coverage; of this amount, 89.18 percent was
attributable to SWS. Best Lloyds became increasingly dependant on SWS and, ultimately,
developed serious financial problems.

 In April of 1987, Dee Jacobs, an examiner with the Texas Department of Insurance
(the "Department"), conducted an audit of Best Lloyds for the year ending December 1986. Her
final report concluded that Best Lloyds was insolvent by approximately $9.5 million. Jacobs
testified that she apprised both Lasiter and John Gordon of her conclusions at an exit conference
on July 23, 1987. Appellant was not present at the exit conference. Jacobs testified that John
Gordon did not dispute the findings or claim that the situation had since changed.

 On January 11, 1988, the Department issued a formal order of supervision and
placed Ramaswamy ("Ram") Sriram in charge of Best Lloyds's affairs. Sriram conducted a
preliminary analysis of Best Lloyds for the period ending November 1987, and concluded that
Best Lloyds was insolvent by approximately $8.817 million. He also discovered a Best Lloyds
check dated January 4, 1988, signed by John Gordon, payable to SWS in the amount of $500,000. 
Furthermore, he uncovered a check dated January 13, 1988, signed by appellant, in the amount
of $300,000 payable from Best Lloyds to SWS. The notation on the second check stated "loan." 
Knowing that a loan from Best Lloyds to SWS would constitute a violation of the Insurance
Code, (4) Sriram notified his superiors of the checks. 

 The State charged appellant and her husband with misapplication of fiduciary funds
over $10,000 on the basis of the January 13, 1988, check from Best Lloyds to SWS. At trial, the
defense strategy was to minimize the degree of control appellant and her husband exercised over
Best Lloyds and the daily accounting and operations of SWS. The defense argued that Monte
Christians, accountant and comptroller of SWS, was responsible for appellant's signature on the
$300,000 check. The State argued, however, that appellant was fully aware of the financial
troubles of Best Lloyds and SWS and signed the check intentionally, knowingly, or recklessly.



DISCUSSION


A. Joint Representation by Counsel

 Appellant and her husband were tried together and were represented by the same
employed counsel. In points of error eight through eleven, appellant complains that being tried
jointly with her husband denied her effective assistance of counsel because an actual conflict of
interest existed between them. 

 Appellant and her husband were charged with the same offense in count one of a
single indictment. However, John Gordon also was charged with several additional counts. 
Before trial, appellant filed a motion to sever, alleging that she would be denied a fair trial if tried
with her husband because he was charged with multiple offenses and because the State intended
to introduce several extraneous offenses against him. John Gordon also filed a motion to sever
the multiple counts against him. The trial court granted John Gordon's motion; it severed count
one from the remaining allegations. Appellant and her husband were then tried jointly, each
charged with the single offense arising out of the check signed by appellant on January 13, 1988. 


 Appellant complains that she was entitled to be tried separately from her husband. 
Nevertheless, Appellant states that her motion to sever was never presented to the trial court and
that the record contains no ruling on her motion; in that case, any error is waived. See Tex. R.
App. P. 52(a). In any event, the granting of John Gordon's motion afforded her at least part of
the relief she had requested. 

 Appellant further contends that she was entitled to separate trial counsel because
an actual conflict with her husband arose from the State's decision to introduce extraneous
offenses against her husband which prejudiced her position. Appellant did not complain about her
counsel below and made no apparent effort to retain counsel separate from her husband. 
Appellant argues that during cross-examination of certain State witnesses, counsel failed to
minimize or differentiate her culpability relative to her husband's. Appellant asserts that separate
counsel would have made a greater effort, both in presenting evidence and at final argument, to
differentiate her conduct from her husband's. Appellant also argues that counsel failed to request
a limiting instruction in the jury charge regarding the extraneous offenses admitted against her
husband. Nothing in the record suggests counsel warned appellant of any risk inherent in his joint
representation of both her and her husband or that appellant waived her rights to complain of the
alleged conflict of interest. See United States v. Greig, 967 F.2d 1018, 1021-22 (5th Cir. 1992)
(holding that for waiver to be effective, the record must show that the trial court determined that
it was knowingly, intelligently, and voluntarily done).

 The Court of Criminal Appeals has held that, in certain cases, representation by
the same attorney of multiple defendants in the same criminal trial may constitute ineffective
assistance of counsel. James v. State, 763 S.W.2d 776, 778 (Tex. Crim. App. 1989); Wenzy v.
State, 855 S.W.2d 52, 57 (Tex. App.--Houston [14th Dist.] 1993, pet. ref'd). When no objection
to an alleged conflict of interest is raised at trial, the defendant must demonstrate that an actual
conflict existed at trial which adversely affected her lawyer's performance. Cuyler v. Sullivan,
446 U.S. 335, 348 (1980). The mere showing of a possible conflict of interest is not sufficient
to prevail on a claim of ineffective assistance of counsel. Ferguson v. State, 639 S.W.2d 307, 310
(Tex. Crim. App. 1982). An actual conflict of interest arises when "`one defendant stands to gain
significantly by counsel adducing probative evidence or advancing plausible arguments that are
damaging to the cause of a codefendant whom counsel is also representing.'" Ex Parte Alaniz,
583 S.W.2d 380, 381 n.3 (Tex. Crim. App. 1979) (quoting Foxworth v. Wainwright, 510 F.2d
1072, 1076 (5th Cir. 1975)); see Gonzales v. State, 605 S.W.2d 278, 282 (Tex. Crim. App.
1980). Thus, "where there is evidence of counsel's `struggle to serve two masters' that cannot
be seriously doubted . . . it follows that an accused's defense is `impaired'." Ex parte Acosta,
672 S.W.2d 470, 474 (Tex. Crim. App. 1984) (citations omitted). "[O]nce a conflict of interest
is shown actually to have affected adequacy of representation, an accused `need not demonstrate
prejudice in order to obtain relief[.]'" Ex parte McCormick, 645 S.W.2d 801, 806 (Tex. Crim.
App. 1983) (quoting Cuyler, 446 U.S. at 349). Thus, an actual conflict of interest which
adversely affects an attorney's performance can never be harmless error. Amaya v. State, 677
S.W.2d 159, 162 (Tex. App.--Houston [1st Dist.] 1984, pet. ref'd). 

 One of the potential conflicts of interest inherent in multiple representation is that
a jointly represented defendant may be harmed more than would a separately represented
defendant by incriminating evidence admitted against a co-defendant. "[S]pecifically, a joint
attorney may be unable to argue that one defendant is less guilty than the others, or that one
defendant deserves less punishment than the others, whereas a separate attorney would be free to
do so . . . ." Amaya, 677 S.W.2d at 164; see also Foster v. State, 693 S.W.2d 412, 414 (Tex.
Crim. App. 1985) (court could not address appellant's assertion that defense counsel failed to
argue that co-defendant's culpability outweighed his own because arguments made at sentencing
hearing were not contained in record). Thus, the conflict often arises not because of what counsel
for the co-defendants does at trial, but rather what he or she refrains from doing. Amaya, 677
S.W.2d at 162. As the United States Supreme Court has stated: 



Joint representation of conflicting interests is suspect because of what it tends to
prevent the attorney from doing. . . . Generally speaking, a conflict may also
prevent an attorney from challenging the admission of evidence prejudicial to one
client but perhaps favorable to another, or from arguing at the sentencing hearing
the relative involvement and culpability of his clients in order to minimize the
culpability of one by emphasizing that of another. Examples can be readily
multiplied. . . . But in a case of joint representation of conflicting interests the
evil--it bears repeating--is in what the advocate finds himself compelled to refrain
from doing, not only at trial but also as to possible pretrial plea negotiations and
in the sentencing process.



Holloway v. Arkansas, 435 U.S. 475, 489-90 (1978) (emphasis added). 

 However, review of counsel's omissions at trial, what he or she would or should
have done in the interests of one or more clients, is highly speculative. "`Potential' conflicts may
indeed become `actual' conflicts of interest during the course of a criminal proceeding, but the
transformation must be firmly based upon changes in the particular case without regard to
speculative, hindsight analysis of an attorney's strategy." James v. State, 763 S.W.2d 776, 782
(Tex. Crim. App. 1989). As such, our review is hindered when passive behavior on the part of
counsel, as opposed to vigorous representation, is alleged to have been unfavorable to the interests
of a client. We must examine the record to determine whether trial counsel's omissions resulted
from a desire to diminish the jury's perception of one co-defendant's guilt. See Cuyler, 446 U.S.
at 348-49 (discussing the Court's finding in Glassner v. United States, 315 U.S. 60, 73 (1942),
that trial counsel's decision to decline cross-examination was influenced by a desire to protect one
co-defendant to the detriment of another co-defendant). 

 Before trial, the State filed a notice of intent to introduce evidence of three
extraneous acts under Rule 404(b). (5) Tex. R. Crim. Evid. 404(b). The State introduced each of
these extraneous offenses at trial, the first two in its case-in-chief, the last in rebuttal. The record
reflects that each time the State offered these acts as evidence, appellant's counsel objected outside
the presence of the jury, arguing the prejudice that would attach to John Gordon and have a
detrimental effect on appellant. The court overruled each objection. 

 After the introduction of one extraneous offense, the court indicated that the
admissibility of the evidence would be handled later with a limiting instruction. In the court's
charge to the jury for John Gordon at the guilt/innocence stage, the court gave a limiting
instruction regarding the extraneous offenses. In appellant's charge, no such instruction was
given, nor did counsel object to its omission. However, in closing argument, counsel emphasized
that a limiting instruction was not included in appellant's charge because the extraneous offenses
were not to be considered by the jury in its deliberations involving her. Counsel also repeatedly
stressed that the jury had to separately consider appellant and her husband in its deliberations;
their separate situations could not be "lump[ed] . . . together." 

 At trial, the State called Ann Meyer to testify. Meyer had known appellant for
many years before working with her and her husband at SWS. Meyer considered the couple her
friends. The State repeatedly asked Meyer about the relative business responsibilities of appellant
and her husband: who made the decisions, how they divided up their responsibilities, who was
the ultimate decision-maker, how they resolved disagreements over business decisions, and who
had knowledge in what areas. Counsel for appellant objected to several of these questions but
on cross-examination made no apparent attempt to distinguish the roles of appellant and her
husband relative to financial decision-making. 

 The State also called two other witnesses, Dee Jacobs and "Ram" Sriram. Jacobs
testified that John Gordon, but not appellant, was present at the exit interview she conducted after
her audit and that he did not dispute the findings nor did he seem surprised at her conclusions. 
Sriram testified that he believed Best Lloyds was, in effect, run by appellant and her husband. 
Counsel for appellant did not cross-examine these witnesses to distinguish appellant and her
husband's roles or to minimize appellant's involvement or knowledge of the business. 

 In the face of appellant's contentions that her trial counsel could or should have
compared or minimized her involvement in the financial aspects of Best Lloyds and SWS, the
State points to many instances in the trial testimony as well as in closing and final argument where
defense counsel did attempt to demonstrate appellant's lack of knowledge and involvement in the
financial transactions of the businesses. In closing argument, defense counsel summarized the
testimony of at least twelve State and defense witnesses, all of whom said at trial that appellant
did not take part in making the financial business decisions. Moreover, appellant testified that she
had no knowledge of accounting or financial matters but simply signed whatever checks were
placed before her. We note that, in fact, appellant's signature was the one on the check giving
rise to this prosecution. Further, in closing argument, defense counsel noted appellant's absence
from the exit conference and emphasized to the jury that appellant should not be included in
"whatever" the State was trying to prove up through Jacobs's testimony. Finally, defense counsel
ended his closing argument with a plea to the jury to look at the evidence and to realize that "Fran
Gordon shouldn't even be in this lawsuit." 

 During final argument at the punishment stage of trial, counsel for appellant argued
that both appellant and her husband should receive probation. Despite evidence adduced at trial
indicating John Gordon's greater involvement in the business generally and his questionable
business practices, trial counsel did not attempt to argue that appellant deserved less punishment
than her husband. However, counsel did compare the relative culpability of appellant and her
husband and emphasized that the evidence did not support appellant's participation in any type of
scheme concocted by her husband. Defense counsel even argued that the jury could infer that
John Gordon protected appellant by keeping her in the dark about financial matters. 

 We conclude that appellant has failed to prove that her trial counsel was operating
under an actual conflict of interest in his joint representation of her and her husband. Although
appellant complains that separate trial counsel "would have" or "could have" undertaken different
defensive strategies to bolster her case, this is nothing but an attempt to elevate potential conflicts
of interest into significant, actual conflicts of interest. "[I]t is not through hindsight that we will
review an attorney's conduct, but through review of actual, significant conflicts of interest at [the]
time of trial . . . ." James, 763 S.W.2d at 780. Without proof that at some point before or
during trial counsel declined to act on appellant's behalf in the hope of helping her husband's case,
we conclude appellant has failed to prove the presence of an actual, significant conflict of interest
that denied her effective assistance of counsel requiring reversal. Points of error eight through
eleven are overruled. 

 In points of error six and seven, appellant complains generally that she was
deprived of due process under the United States Constitution and denied due course of law under
the Texas Constitution. Presumably, appellant advances her arguments under the theory that
because of the actual conflict of interest at trial and the resulting deprivation of effective assistance
of counsel, she was deprived of a fundamentally fair trial. We have held that appellant failed to
prove that an actual conflict of interest denied her effective assistance of counsel. Accordingly,
we find appellant's sixth and seventh points of error to be without merit, and we overrule them.



B. Sufficiency of the Evidence 

 In her first four points of error, appellant complains that the evidence at trial was
legally and factually insufficient to support findings that she intentionally or knowingly misapplied
$300,000 belonging to Best Lloyds and that she did so in a manner involving a substantial risk
of loss to Best Lloyds. The Texas Penal Code defines "misapply" as meaning to deal with
property contrary to "an agreement under which the fiduciary holds the property." Tex. Penal
Code Ann. § 32.45 (a)(2)(A) (West 1994). 

 In reviewing the legal sufficiency of the evidence to support a criminal conviction,
this Court does not ask whether it believes that the evidence at trial established guilt beyond a
reasonable doubt. Instead, the relevant inquiry is whether, after viewing the evidence in the light
most favorable to the prosecution, any rational trier of fact could have found the essential elements
of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979);
Griffin v. State, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981).

 The appellate courts in Texas disagree as to the appropriateness of an appellate
court conducting a factual sufficiency review of a jury verdict in a criminal case. Compare Clewis
v. State, 876 S.W.2d 428 (Tex. App.--Dallas 1994, pet. granted) (holding that Jackson standard
of review is sole standard for appellate review of sufficiency of evidence to establish elements of
a criminal offense) with White v. State, No. 6-94-046-CR, slip op. (Tex. App.--Texarkana Nov.
9, 1994, pet. filed) (concluding factual sufficiency review in criminal cases within authority of
appellate courts and reversing for new trial based on factually insufficient evidence to support
jury's finding of guilty). This Court has held that appellate courts have such jurisdiction. See
Stone v. State, 823 S.W.2d 375 (Tex. App.--Austin 1992, pet. ref'd, untimely filed) (holding that
in conducting such a review, the appellate court reviews all of the evidence equally and should
set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust). See also Bigby v. State, No. 71,234, slip op. at 9-13 (Tex. Crim.
App. Nov. 2, 1994) (recognizing authority and applying factual sufficiency review to an
affirmative defense). Even with the authority to conduct a factual sufficiency review, we
recognize that as a practical matter, the records will be few in which the evidence is sufficient to
prove guilt beyond a reasonable doubt but at the same time is factually insufficient. 

 Appellant asserts the evidence is insufficient to support a finding that she
intentionally or knowingly misapplied the subject funds (6) because the $300,000 check she signed
from Best Lloyds to SWS did not contain a second signature as required by the signature card on
Best Lloyds's checking account. Because the check was neither negotiable nor properly payable
by the bank, she contends that the funds were never effectively transferred from Best Lloyds's
account to SWS's account. Furthermore, she argues that the mere act of signing a check, without
more, does not constitute an intentional or knowing misapplication of Best Lloyds's property. 
Appellant additionally argues that even if the funds were transferred to SWS's account, they were
never at a substantial risk of loss because they legally remained in a federally insured bank
account. 

 At trial, evidence established that Best Lloyds checks bearing only appellant's
signature were negotiated on a routine basis; that the same day she signed the check in question,
appellant also signed a Best Lloyds check for $250,000, committing Best Lloyds to a reinsurance
agreement; that at the time the check in question was made, Best Lloyds was insolvent; that SWS
possessed all Best Lloyds's accounting records and checkbook; that appellant was not involved
in day to day accounting issues and that appellant was primarily responsible for non-financial
operations of Best Lloyds; that in John Gordon's absence, employees at SWS went to appellant
to make decisions, including decisions about claims and accounting issues; that in 1987, appellant
attended SWS's monthly managerial meetings; that in 1987, appellant was present when SWS's
independent accountant distributed a preliminary draft of SWS's financial condition concluding
that SWS had lost over $2 million dollars by the end of 1986; that appellant had been in the
insurance business since the 1960's and held four insurance licenses; and that in January 1988
appellant knew SWS was experiencing cash flow problems. Applying the appropriate standards
of review, we conclude that the evidence is sufficient to support a finding that appellant either
intentionally or knowingly misapplied funds of Best Lloyds when she made a $300,000 check
from Best Lloyds payable to SWS, knowing that SWS was the fiduciary of Best Lloyds and that
she did so in a manner that involved substantial risk of loss to Best Lloyds, the owner of the
funds. We overrule appellant's first four points of error. 



C. Objections to the Indictment

 Appellant's twelfth point of error contends that her prosecution for misapplication
of fiduciary funds pursuant to section 32.45 of the Penal Code violated restrictions against the use
of a general statute when a more specific statute in the Texas Insurance Code could have been
applied. See Tex. Ins. Code Ann. art. 21.49-1, § 13 (West Supp. 1995) (Insurance Holding
Company System Regulatory Act). Appellant failed to lodge such an objection to the indictment
before trial. See Tex. Code Crim. Proc. Ann. art. 1.14(b) (West Supp. 1995) (requiring a
defendant to object to any defects of form or substance in an indictment before the trial on the
merits commences). Appellant has thus waived this point of error. Studer v. State, 799 S.W.2d
263, 273 (Tex. Crim. App. 1990). 

 Appellant's thirteenth, fourteenth, fifteenth and sixteenth points of error contend
that the State's use of Insurance Code Articles 21.79B and 21.79C to prosecute her constituted
ex post facto applications of the two statutes in violation of the Fifth and Fourteenth Amendments
to the United States Constitution and Article I, section sixteen of the Texas Constitution. See Tex.
Ins. Code Ann. arts. 21.79B, .79C (West Supp. 1995). As in her twelfth point of error, appellant
failed to lodge objections to the indictment regarding these issues prior to the commencement of
trial. She has thus waived these four points of error. See Studer, 799 S.W.2d at 273.



D. Motion to Quash 

 Appellant argues in her fifth point of error that the trial court erred in denying her
motion to quash "Paragraph II of Count I of the indictment." Appellant contends that the second
paragraph of the first count, in contrast to the first paragraph, failed to allege specifically that the
charged acts were committed by appellant "while engaged in the business of insurance." (7) This
language is necessary to invoke Travis County venue. See Tex. Ins. Code Ann. art. 21.79B. 
Instead, the second paragraph simply incorporates the entire first paragraph of Count I by stating
"the acts alleged in the preceding paragraph were committed recklessly." We hold that by
referencing the first paragraph of Count I, when both paragraphs together allege only one
misapplication offense, the indictment properly set out the reckless allegations in a separate
paragraph. See Bivins v. State, 706 S.W.2d 165, 166 (Tex. App.--Beaumont 1986, pet. ref'd)
(holding that the words "intentionally, knowingly, and recklessly" allege culpability and do not
constitute three separate offenses but can be charged in a single count); see also Callins v. State,
780 S.W.2d 176, 183 n.12 (Tex. Crim. App. 1986) ("A `paragraph' is a subset of a count and
is used to charge alternative methods of committing the same statutory offense.").

 Even assuming, for the sake of argument, that the trial court erred in denying
appellant's motion to quash, such error is harmless beyond a reasonable doubt. The jury returned
guilty verdicts as to both paragraphs of Count I, finding appellant guilty of intentional and
knowing misapplication of property as well as reckless misapplication of property. Appellant's
conviction for intentional and knowing misapplication of property remains valid even if her
conviction for reckless misapplication were reversed. The punishment for a conviction under
section 32.45 of the Penal Code depends on the value of the misapplied property rather than the
mental state of the convicted actor. Tex. Penal Code Ann. § 32.45(c) (West 1994). We overrule
appellant's fifth point of error.



E. Limiting Instruction

 Appellant's seventeenth point of error contends that her right to a fair trial was
abrogated by the failure of the trial court to include a limiting instruction in the jury charge
concerning the extraneous conduct committed by her co-defendant. Appellant admits that since
she failed to lodge an objection at trial to the absence of a limiting instruction on the extraneous
offenses issue, this Court's harm analysis is governed by Almanza v. State, 686 S.W.2d 157 (Tex.
Crim. App. 1984). 

 Under Almanza, when a defendant fails to object to the charge at trial, she will
obtain a reversal only if egregious harm occurred so that she was denied a fair and impartial trial. 
Id. at 171. The degree of harm must be assayed in light of the entire jury charge, the state of the
evidence, including the contested issues and weight of the probative evidence, the argument of
counsel, and any other relevant information revealed by the record of the trial as a whole. Id. 
Appellant argues that the lack of a limiting instruction in her charge regarding the extraneous
offenses admitted into evidence for the limited purpose of showing her husband's intent harmed
her by encouraging an inference that she was guilty by association. She also argues that her harm
is indicated by the verdict.

 The record reveals that John Gordon's jury charge included a limiting instruction
directed to evidence introduced at trial of his alleged extraneous offenses; the limiting instruction
provided that evidence of those transactions was to be considered solely to show John Gordon's
intent, scheme, or motive and for no other purpose. During final argument at the trial's guilt-innocence stage, appellant's counsel emphasized that appellant's charge did not contain a limiting
instruction like that in John Gordon's charge; moreover, he specifically expressed that when
deliberating about appellant, the jury was not to consider the evidence of John Gordon's other
transactions. 

 We recognize that egregious harm is not shown just because the jury renders a
guilty verdict. Following our review of the record, including the jury charges of both defendants
and appellant's counsel's jury argument about the charges, as well as evidence introduced at trial,
which we have already held to be sufficient to support appellant's conviction, we hold that harm,
if any, suffered by appellant from the lack of a limiting instruction in the jury charge on her behalf
did not rise to the egregious level requiring reversal. We overrule appellant's seventeenth point
of error. 



F. Assistance of Counsel 

 Appellant's eighteenth point of error contends that appellant was denied effective
assistance of counsel because her trial counsel failed to request a limiting instruction concerning
the extraneous offenses introduced by the State against her co-defendant. Claims of ineffective
assistance of counsel are reviewed under the standard established in Strickland v. Washington, 466
U.S. 668 (1984). See Hernandez v. State, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986) (adopting
Strickland standard). In Strickland, the Supreme Court adopted a two-pronged analysis: (1) the
defendant must show that trial counsel's performance was deficient, to the extent that counsel
failed to function as the "counsel" guaranteed by the Sixth Amendment; and (2) the defendant
must show that trial counsel's deficient performance prejudiced her defense so as to deprive her
of a fair trial. Strickland, 466 U.S. at 687. Whether trial counsel was ineffective is to be judged
in light of all the circumstances. Thus, "whether the appellant received error-free representation
is not the test; that appellant's counsel made some mistakes at trial does not show ineffective
assistance." Davis v. State, 830 S.W.2d 762, 765 (Tex. App.--Houston [1st Dist.] 1992, pet.
ref'd). Furthermore, a court must evaluate the challenged conduct from counsel's perspective at
the time of trial and not through hindsight. Strickland, 466 U.S. at 689; Stafford v. State, 813
S.W.2d 503, 506 (Tex. Crim. App. 1991). Finally, there is a strong presumption that counsel's
conduct meets the reasonable assistance standard; thus, "the defendant must overcome the
presumption that, under the circumstances, the challenged action `might be considered sound trial
strategy.'" Strickland, 466 U.S. at 689. We have already held that the absence of a
limiting instruction in appellant's jury charge did not constitute egregious harm. Even if appellant
were to overcome the presumption that counsel's failure to request a limiting instruction was trial
strategy, so that the first prong of the Strickland test was met, we could not say, under the second
prong of Strickland, that trial counsel's failure to request a limiting instruction so prejudiced
appellant's defense that she was deprived of a fair trial. We overrule point of error eighteen.

 Appellant's nineteenth point of error complains that appellant was denied effective
assistance of counsel because her trial counsel failed to file a motion to quash the indictment based
upon an ex post facto application of the Penal Code and based upon an improper charge under a
general penal statute rather than a specific statute in the Insurance Code. Specifically, appellant
asserts that trial counsel should have argued that Article 21.79C of the Insurance Code (8) could not
be retroactively applied, and that the conduct for which she was charged should have been indicted
and prosecuted under Article 21.49-1, section 13 of the Insurance Code. 

 We first note that appellant was prosecuted under section 32.45 of the Penal Code
for misapplication of fiduciary property. The indictment does not indicate that an election of
statutes was made pursuant to Article 21.79C of the Insurance Code. Moreover, Article 21.49-1,
section 13 of the Insurance Code, part of the Insurance Holding Company System Regulatory Act,
provides for criminal sanctions for wilful violations of only the Holding Company Act, not other
portions of the Insurance Code. See Tex. Ins. Code Ann. art. 21.49-1, § 13 ("Whenever it
appears . . . that any insurer . . . has committed a wilful violation of this article, . . . criminal
proceedings [may] be instituted by the district attorney . . . .") (emphasis added). The record
does not reflect that the State alleged appellant breached any section of the Holding Company Act. 
We hold that the substance of the indictment did not authorize trial counsel to file any motion to
quash on the point urged by appellant. Trial counsel cannot be held ineffective for failure to raise
an untenable point. Kinnamon v. State, 791 S.W.2d 84, 97 (Tex. Crim. App. 1990). Trial
counsel's performance in failing to file the suggested motion to quash was not deficient. See
Strickland, 466 U.S. at 687. We overrule point of error nineteen. 



G. Witness Monte Christians

 Appellant's points of error twenty and twenty-one complain that the trial court
erred in submitting to the jury the question of whether Monte Christians, SWS's comptroller, was
an accomplice witness, rather than instructing the jury that Christians was an accomplice witness
as a matter of law. An accomplice witness is one who participates before, during, or after the
commission of a crime. Gamez v. State, 737 S.W.2d 315, 322 (Tex. Crim. App. 1987). In
Gamez, the Court of Criminal Appeals explained:



[A] witness is not deemed an accomplice witness because he knew of the crime but
failed to disclose it or even concealed it. . . . When the evidence clearly shows the
witness is an accomplice witness as a matter of law, the trial court must so instruct
the jury. . . . When there is a question from the evidence whether a witness is an
accomplice witness, it is then proper to submit that fact issue to the jury, and this
is sufficient even though the evidence appears to preponderate in favor of the
conclusion that the witness is an accomplice witness as a matter of law.



Id. (emphasis added) (citations omitted).

 Appellant argues that Christians was an accomplice as a matter of law because he
testified that: he and John Gordon developed a plan to transfer funds from Best Lloyds to SWS;
he requested the $300,000 check in question and presented it to appellant for her signature; and
he deposited that check into the bank. Yet, the record also reveals that Christians testified that
at the time, he did not believe transferring funds between Best Lloyds and SWS was wrong and
that it was an acceptable business practice to do so; that he had nothing to gain from the
transactions; and that when he was employed by SWS in 1984, he had no prior insurance
accounting experience. We find that Christians's testimony created some doubt as to whether he
was an accomplice witness. We cannot say the trial court erred in submitting this fact issue to the
jury. Appellant fails to explain how she, specifically, was harmed by the submission of the
question to the jury. Moreover, even assuming that the trial court did err, appellant cites no
authority as to why this error requires reversal. We overrule points of error twenty and twenty-one.



H. Venue 

 Appellant argues in her final point of error that the trial court erred in overruling
her objection to Travis County venue. In criminal cases, venue is generally controlled by Article
13.18 of the Texas Code of Criminal Procedure, which provides that "[i]f venue is not specifically
stated, the proper county for the prosecution of offenses is that in which the offense was
committed." Tex. Code Crim. Proc. Ann. art. 13.18 (West 1977). Appellant contends that since
section 32.45 of the Penal Code does not specify venue, Article 13.18 of the Code of Criminal
Procedure must apply, so that Harris County, where the alleged offense occurred, is the county
of proper venue. Appellant argues that the State's reliance on Article 21.79B of the Insurance
Code (9) to provide venue in Travis County is misplaced because that statute was not effective until
June 14, 1989, long after the acts alleged in the indictment were committed. Appellant further
argues that venue in Travis County is misplaced because Article 21.79B is not applicable to
Lloyds' plan insurance companies in light of Article 18.23 of the Insurance Code. Article 18.23
provides:

Underwriters at a Lloyds' shall be exempt from the operation of all insurance laws
of this State except as in this Chapter specifically provided, or unless it is
specifically so provided in such other law that same shall be applicable.



Tex. Ins. Code Ann. art. 18.23 (West Supp. 1995) (emphasis added). 

 In response, the State contends that Article 18.23, protecting Best Lloyds's
underwriters rather than its entire company, was never applicable to appellant's prosecution; since
appellant was not prosecuted in her capacity as an underwriter but in her individual capacity as
owner of SWS, Article 21.79B may apply in the instant case for venue purposes. We agree. The
exemption set forth in Article 18.23 of the Insurance Code is very narrow: in plain language, the
article only exempts underwriters at Lloyds' insurance companies. The record reveals that
appellant is most certainly an underwriter for Best Lloyds; (10) however, it also indicates that
appellant's misapplication of property offense stemmed from her role as the owner of SWS and
the agreement and laws directed to her as the owner of SWS. In her capacity as owner of SWS,
appellant signed agreements with Best Lloyds and agreed to act as a fiduciary to Best Lloyds;
thus, the Article 18.23 exemption for underwriters of Lloyds' companies does not apply to her. 
Since the exemption set forth in Article 18.23 does not apply in this case, Article 21.79B may
provide venue authority. Article 21.79B creates venue in Travis County for the criminal
prosection of any "person" who violates a penal provision of the Insurance or Penal Codes while
engaged in the "business of insurance." It properly provides venue for appellant, a "person"
engaged in the "business of insurance" charged with a violation of the Penal Code. (11) We overrule
appellant's twenty-second point of error.



CONCLUSION


 Having overruled all of appellant's twenty-two points of error, we affirm the trial
court's judgment of conviction. 



 

 Marilyn Aboussie, Justice

Before Justices Powers, Aboussie and Jones

Affirmed

Filed: March 1, 1995

Do Not Publish 

1.   This offense took place before September 1, 1994, and is governed by the law in effect
at the time the offense was committed. Penal Code, 73d Leg., R.S., ch. 900, § 1.18, 1993
Tex. Gen. Laws 3586, 3705. Because the code amendments effective September 1, 1994,
have no substantive effect on this offense, the current code is cited for the sake of
convenience.
2.   A Lloyds company is a group of ten or more individuals joining together to insure risks.
3.   A MGA serves as an intermediary between insurance companies and local recording
agents who actually write insurance policies.
4.   See Tex. Ins. Code Ann. art. 1.29 (West 1981).
5.   Among the acts listed were (1) a check John Gordon had signed on January 4, 1988,
from Best Lloyds to SWS; (2) two December 1987 checks John Gordon had signed from Best
Lloyds to SWS; and (3) the December 1987 "Rolzcad transaction," in which John Gordon
received $70,000 that belonged to Best Lloyds.
6.   The jury also found appellant guilty of reckless misapplication of fiduciary property. 
Appellant does not contest this finding on appeal. 
7.   The first paragraph of Count I charges appellant with intentional and knowing
misapplication of property of Best Lloyds. The second paragraph of Count I charges appellant
with reckless misapplication of property of Best Lloyds.
8.   Article 21.79C of the Insurance Code, entitled "Election of Prosecution," provides: "A
person who commits an offense under this code may be prosecuted under this code or any
other law of this state under which he may be prosecuted." Tex. Ins. Code Ann. art. 21.79C. 
9. This article provides that:


A person who violates a penal provision of this [Insurance] code or a
provision of the Penal Code while engaged in the business of insurance
may be prosecuted in a court of competent jurisdiction in Travis County
or in a county in which prosecution is authorized under the Code of
Criminal Procedure. 


Tex. Ins. Code Ann. art. 21.79B. 
10. Underwriters represent the financial backing for a Lloyds company. Percentage of
ownership is represented by each underwriter's respective contribution to the Lloyds
company's initial capital and surplus. 
11. The indictment was filed in September 1990, well after the date Article 21.79B went
into effect.