## EX PARTE Brian F. ROBERTS

### NO. 14–15–00338–CR

Court of Appeals of Texas, Houston (14th Dist.).

Concurring Opinions filed March 10, 2016

Discretionary Review Refused May 25, 2016

Thomas Abbate, Houston, TX, for Appellant.

Patricia McLean, Houston, TX, for State.

Panel consists of Justices Christopher, McCally, and Busby

## MAJORITY OPINION

J. Brett Busby, Justice

Appellant Brian F. Roberts appeals the trial court's order denying his application for writ of habeas corpus, which alleges counsel had a conflict of interest and provided ineffective assistance in advising him to plead guilty to possession of marijuana. Because the trial court did not abuse its discretion in concluding that the doctrine of laches prevents appellant from obtaining relief, we affirm.

### BACKGROUND

Appellant is a permanent legal resident of the United States. In July 2001, appellant visited Texas to see his family, including his cousin, Dwight Smith. On July 26,

2001, police officers received information regarding suspicious activity occurring in an apartment complex. Upon arriving at the complex, the officers saw three men standing by the rear of a car and concentrating on the contents of the trunk. As the officers exited their vehicle and approached, the men walked away from the car, leaving the trunk open, and one of the men fled the scene. Appellant and Smith remained at the scene, standing at the front of the car. The officers noted a strong odor of marijuana and found 10.5 pounds of marijuana in the trunk of the car.

Appellant and Smith were both charged with felony possession of marijuana and each hired the same counsel to represent him. On November 26, 2001, appellant pled guilty and was placed on probation for three years. *See* Tex. Health & Safety Code Ann. § 481.121(b)(4) (West 2010). On this same date, Smith's case was dismissed. In 2002, defense counsel died. Appellant was discharged from probation in 2004.

Almost thirteen years after his conviction, appellant filed an application for an Article 11.072 writ of habeas corpus on October 31, 2014, alleging his plea was involuntary due to an actual conflict of interest in defense counsel's dual representation of him and Smith. The trial court denied appellant's application and signed findings of fact and conclusions of law that, among other things, concluded that the doctrine of laches applied to the application. Appellant now appeals.

## Analysis

### I. Standard of review and applicable law

In his sole issue on appeal, appellant argues that the trial court abused its discretion in denying his application. We review a trial court's decision on an application for writ of habeas corpus for abuse of discretion. *See Ex parte Garcia*, 353 S.W.3d 785, 787 (Tex.Crim.App.2011); *Ex parte Reyna*, 435 S.W.3d 276, 280 (Tex. App.–Waco 2014, no pet.). An applicant seeking post-conviction habeas corpus relief bears the burden of establishing by a preponderance of the evidence that the facts entitle him to relief. *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex.Crim.App. 2002). We consider the evidence presented in the light most favorable to the habeas court's ruling. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex.Crim.App.2006).

The doctrine of laches may apply to habeas applications filed under Article 11.072. *See Ex parte Bowman*, 447 S.W.3d 887, 888 (Tex.Crim.App.2014). "The common-law doctrine of laches is defined as neglect to assert [a] right or claim which, taken together with lapse of time and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity. Also, it is the neglect for an unreasonable and unexplained length of time under circumstances permitting diligence, to do what in law, should have been done." *Ex Parte Perez*, 398 S.W.3d 206, 210 (Tex.Crim.App.2013) (citing Black's Law Dictionary 875 (6th ed.1990)).

Prior to 2013, Texas courts employed a federal standard in deciding whether laches applies to petitions for habeas corpus. *Id.* at 211. Under the federal standard, a state was required to "(1) make a *particularized* showing of prejudice, (2) show that the prejudice was *caused* by the petitioner having filed a late petition, and (3) show that the petitioner has not acted with reasonable diligence as a matter of law." *Ex Parte Carrio*, 992 S.W.2d 486, 488 (Tex. Crim.App.1999) (citing *Walters v. Scott*, 21 F.3d 683, 686–87) (5th Cir.1994)).

In *Perez*, the Court of Criminal Appeals determined that although the Court's

adoption of the federal laches standard "was logically sound at the time, ... events ... since *Carrio* demand that we abandon that standard in favor of a more equitable approach." *Perez*, 398 S.W.3d at 213. Going forward, the Court held, it "will (1) no longer require the State to make a 'particularized showing of prejudice' so that courts may more broadly consider material prejudice resulting from delay, and (2) expand the definition of prejudice under the existing laches doctrine to permit consideration of anything that places the State in a less favorable position, including prejudice to the State's ability to retry a defendant, so that a court may consider the totality of the circumstances in deciding whether to grant equitable relief." *Id.* at 215.

This revised approach allows courts to consider factors such as "the length of the applicant's delay in filing the application, the reasons for the delay, and the degree and type of prejudice resulting from the delay." *Id.* at 217. In evaluating prejudice, a court may consider "anything that places the State in a less favorable position, including prejudice to the State's ability to retry a defendant." *Id.* at 215. Thus, a court may take into account the diminished memories of witnesses and the "diminished availability of State's evidence, both of which may often be said to occur beyond five years after a conviction becomes final." *Id.* at 216. "In considering whether prejudice has been shown, a court may draw reasonable inferences from the circumstantial evidence to determine whether excessive delay has likely compromised the reliability of a retrial." *Id.* at 217.

Importantly, "the extent of the prejudice the State must show bears an inverse relationship to the length of the applicant's delay." *Id.* Thus, "the longer an applicant delays filing his application,

and particularly when an applicant delays filing for *much more than five years* after conclusion of direct appeals, the less evidence the State must put forth in order to demonstrate prejudice." *Id.* at 217–18 (emphasis added). The Court explained that this sliding-scale approach is based on the fact that the longer a case has been delayed, the more likely the delay has compromised the reliability of a retrial. *Id.* Although the Court did "not identify any precise period of time after which laches necessarily applies," it recognized "that delays of more than five years may generally be considered unreasonable in the absence of any justification for the delay." *Id.* at 220 n. 12. In addition, a court may consider "the State's and society's interest in the finality of a conviction in determining whether laches should apply." *Id.* at 218.

"If prejudice to the State is shown, a court must then weigh that prejudice against any equitable considerations that militate in favor of granting habeas relief." *Id.* at 217. A court may reject the State's reliance on laches when the record shows that: (1) "an applicant's delay was not unreasonable because it was due to a justifiable excuse or excusable neglect;" (2) "the State would not be materially prejudiced as a result of the delay;" or (3) the applicant is entitled to equitable relief for some other compelling reason, such as actual innocence or being "reasonably likely to prevail on the merits." *Id.* at 218.

## II. The trial court did not abuse its discretion in denying appellant's application based on laches.

Appellant argues his counsel rendered ineffective assistance due to a conflict of interest, and that the egregiousness of counsel's ethical violation and the harm suffered by appellant outweigh any prejudice to the State resulting from the length

of the delay in filing this application. Specifically, appellant alleges his counsel advised him to plead guilty pursuant to a plea bargain with the State, which agreed to dismiss the charge against Smith, his codefendant. Appellant claims counsel advised him in 2001 that although appellant could get out of jail on probation, Smith would be deported should he be convicted, and that was the reason appellant pleaded guilty. For the first time in 2014, appellant claimed that counsel never admonished him about a conflict of interest. Appellant executed an affidavit supporting these contentions and submitted it with his application.

At the hearing on the application, the son of appellant's deceased trial counsel, who had worked as an attorney with his father, testified that any records regarding appellant's case were no longer in the firm's possession because of a flood and that he only vaguely recalled his father's representation of appellant. Counsel's son further testified that his father's custom regarding representation of codefendants was to speak with each individual about any conflict of interest, inform them of the benefits and disadvantages of using one lawyer, and determine whether they wished to waive the conflict or request representation by other counsel.

The court recessed the hearing to determine whether there was anything in the reporter's record of the plea hearing that was relevant to appellant's allegations. At a subsequent hearing, the court denied appellant's writ under the doctrine of laches and made oral findings that: (1) there was no record or evidence regarding dual representation or the bargain behind appellant's guilty plea, (2) the court was familiar with counsel and thought highly of his reputation, (3) appellant made no complaint about counsel's representation until he filed the habeas application, (4) the

drugs had been destroyed, and (5) counsel had a practice of advising his clients about any conflict of interest. The court subsequently signed findings of fact and conclusions of law, which included specific findings crediting the testimony of counsel's son.

We conclude that the trial court did not abuse its discretion in denying appellant's application under the doctrine of laches. Looking to the considerations laid out in *Perez*, appellant waited almost thirteen years before bringing his habeas application, and delays of more than five years are considered unreasonable in the absence of any explanation for the delay. *See id.* at 220 n. 12. "While equity may ultimately require denying relief, it nonetheless requires giving the applicant an opportunity to explain his delay." *Ex Parte Smith*, 444 S.W.3d 661, 670 (Tex. Crim.App.2014) (citing *Perez*, 398 S.W.3d at 218)). Appellant concedes that he cannot provide any explanation or reason for his delay.

Appellant further concedes that the State has indeed been prejudiced by his thirteen-year delay because both the State and trial counsel have lost or destroyed relevant evidence. With respect to appellant's habeas claim of ineffective assistance of counsel, appellant's trial counsel has passed away and thus cannot explain to the trial court what he told appellant, if anything, concerning a conflict of interest. There is no record or evidence regarding how the alleged conflict was handled or the bargain behind appellant's guilty plea, and the only person other than appellant to remember anything concerning appellant's case was counsel's son, who remembered very little about his father's handling of appellant's particular case. Diminished memories and lost evidence weigh heavily in favor of laches. Additionally, appellant's delay has to some extent diminished

the evidence available for a retrial on the underlying offense, as the trial court found the drugs had been destroyed.

Appellant argues, however, that equitable considerations weigh in favor of rejecting laches. As just explained, appellant provides no justifiable excuse for his delay, and the State has been prejudiced by the delay. Thus, we consider the remaining equitable consideration identified in *Perez*: whether appellant is reasonably likely to prevail on the merits of his ineffective assistance of counsel claim.

As appellant points out, a "criminal defendant is entitled to the assistance of counsel free from any conflict of interest." *Ex parte Prejean*, 625 S.W.2d 731, 733 (Tex.Crim.App.1981) (citing *Gonzales v. State*, 605 S.W.2d 278) (Tex.Crim. App.1980)). But, "the right to conflict-free counsel may be waived, if done so knowingly and voluntarily." *Id.* Here, the diminished record available to us contains conflicting evidence regarding whether appellant was in fact warned about any conflict of interest or whether appellant waived such a conflict, given appellant's lengthy delay before bringing his habeas action. Although appellant contends in his affidavit that he was not warned, the trial court found credible the testimony of counsel's son that counsel's practice was to admonish clients regarding the benefits and disadvantages of using one lawyer and then determine whether they wished to waive the conflict or request other counsel. Because a trial court evaluating a claimed conflict of interest may "disbelieve any evidence the probativeness of which depends on the credibility of its source," *Odelugo v. State*, 443 S.W.3d 131, 138 (Tex. Crim.App.2014), the trial court could conclude that appellant was not reasonably likely to prevail on the merits of his ineffective assistance of counsel claim. Having reviewed the relevant considerations,

we conclude the trial court did not abuse its discretion in denying appellant's habeas corpus application on the basis of laches.

## CONCLUSION

We overrule appellant's issue on appeal and affirm the trial court's denial of his application for writ of habeas corpus.

(Christopher, J., concurring).

Christopher, J., concurring.

The trial court concluded: "In all things the applicant fails to show that counsels' conduct fell below the objective standard of reasonableness and that but for counsels' alleged deficient conduct there is a reasonable probability that the result of the proceeding would have been different." The evidence supports that conclusion. It is unnecessary for us to apply laches to resolve this appeal.

The majority finds prejudice to the State from the passage of time and the destruction of the marijuana. The offense report still exists and indicates that two police officers were involved in the arrest. We have no evidence that those two officers are unable or unavailable to testify about the arrest, and it is well-established that a police officer can testify that what was seized was marijuana, without having tested it or putting it into evidence. *See Osbourn v. State*, 92 S.W.3d 531, 537–39 (Tex.Crim.App.2002); *Boothe v. State*, 474 S.W.2d 219, 221 (Tex.Crim.App.1971).

The trial court reviewed the underlying clerk's record, and before the trial of the case in 2001, the State filed a notice of intent to use expert testimony, naming five officers and an HPD chemist. There was no evidence that these witnesses were unable or unavailable to testify.

The majority also relies on the fact that appellant's primary lawyer[1] has died and that the lawyer's office no longer has a file on the case, making it more difficult for the State to respond to the writ. But this did not prejudice the State—the trial court was able to review all of the evidence and conclude that counsels' conduct did not fall below the standard of care.

I see no impediment to the State's re-trial of appellant. Without an impediment to re-trial, we should not apply laches. Because the majority does, I do not join its opinion, but I respectfully concur in its judgment.

---

1. His son, who testified at the hearing, filed pleadings on behalf of the appellant and was listed as co-counsel.