# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00311-CR

---

## Ex parte Philip Clinton Allen

---

### FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
### NO. 2010-110-001, THE HONORABLE JACK H. ROBISON, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Phillip Clinton Allen filed an application for a writ of habeas corpus seeking an out of time appeal from his prior conviction. *See* Tex. Code Crim. Proc. art. 11.072. The trial court denied Allen's application. Allen appeals the trial court's ruling. We will affirm the trial court's order.

## BACKGROUND

In 2010, a grand jury charged Allen with the offense of online solicitation of a minor for conduct occurring on or around December 2009. *See* Tex. Penal Code § 33.021(c).[1] The trial occurred over a year later in April 2011. During the trial, Mary Smith (pseudonym)

---

[1] Allen was charged under subsection 33.021(c), which prohibits an individual from soliciting a minor online to meet another person, including the actor, with the intent that the minor will engage in sexual behavior with the actor or the other person. Tex. Penal Code § 33.021(c). After the trial, the Court of Criminal Appeals determined that a different portion of section 33.021, subsection 33.021(b), was unconstitutional. *Ex parte Lo*, 424 S.W.3d 10, 14, 27 (Tex. Crim. App. 2013). That provision, in contrast to subsection 33.021(c), prohibited someone from communicating online with a minor in a sexually explicit manner. *Id.* In its opinion, the Court also explained that statutes like subsection 33.021(c) "have been routinely upheld as constitutional." *Id.* at 16.

testified that she took cheerleading lessons from Allen starting when she was thirteen years old, that Allen had multiple conversations with her about sex and about having sex with her, that they exchanged text messages that were sexual in nature, that Allen asked her to take and show him photos of her naked, that she took photos of her breasts and vagina for him to look at, that they engaged in phone sex, that he "rub[ed] his penis on my butt" when they were at a cheerleading competition, and that Allen offered to take her to a hotel to have sex. Copies of text messages between Allen and Smith were admitted into evidence, including one in which Allen said that he could pick her up and take her to a hotel.

At trial, a recording of Allen's interview by the police was admitted into evidence. On the recording, Allen admitted that he told Smith it would be nice to see naked photos of her, that he later saw pictures of Smith's breasts and vagina, that he tried to teach her how to masturbate, that they had graphic conversations about sex, and that they discussed him wanting to perform oral sex on her and engage in other sexual acts. After considering the evidence presented, the jury sentenced Allen to six years' imprisonment but also recommended that Allen be placed on community supervision for the offense, and the trial court ordered that Allen be placed on community supervision for ten years. *See id.* § 12.33.

Almost ten years later in January 2021, Allen filed an application for writ of habeas corpus seeking an out-of-time appeal. *See* Tex. Code Crim. Proc. art. 11.072. In his habeas application, Allen asserted that his trial attorney's health began deteriorating shortly after the conviction, that his trial attorney passed away approximately four months after his conviction, that his trial attorney did not inform him of his appellate rights or the impending deadline for filing a notice of appeal, that he would have appealed his conviction if he had been informed of that option, and that he was told by an associate of his trial attorney that the deadline

2

for filing an appeal had run. Regarding arguments he would have presented on appeal, Allen stated that he would have appealed "the inclusion of [the] anti-defensive provision language" in the jury charge that he argues negated "the essential element of intent." Relatedly, Allen argued that his trial attorney's failure to inform him of his appellate rights and impending deadlines deprived him of the opportunity to present his appellate complaint and constituted ineffective assistance of counsel, entitling him to an out-of-time appeal.

As support for his request for habeas relief, Allen attached to his habeas application his own affidavit and an unsigned and unsworn affidavit purportedly from his trial attorney's associate, David Wyrick. In his own affidavit, Allen stated that his trial attorney "did not discuss my appellate rights or deadlines . . . prior to, or after my conviction"; that his trial attorney "did not discuss any appellate issues or errors"; that he last spoke with his trial attorney on the day of trial; and that he learned that his trial attorney passed away a few months after the trial concluded. Further, Allen asserted that if he "had been informed of [his] appellate rights and deadlines, [he] would have hired appellate counsel and filed a notice of appeal within the deadline."

The unsigned affidavit attributed to Wyrick stated that in June 2011 Allen's trial attorney enlisted his help with several criminal defense cases, including another case involving Allen. The document described Allen's trial attorney as "very fatigued, inattentive, impulsive, cavalier, short fused[,] and irritable" and as having "a limited understanding of criminal procedure and criminal defense." Further, the document stated that Allen's trial attorney abruptly died a few months after Allen's trial. Regarding Allen, the document related that by the time Wyrick learned of Allen's conviction, "his thirty day deadline to file a notice of intent to appeal the conviction . . . had expired." When describing Wyrick's interaction with Allen, the

3

document explained that Allen related that he did not commit the offense for which he had been convicted, that Wyrick told Allen a few months after Allen's conviction that the deadline for filing an appeal had passed, that Allen was unaware of a deadline for filing an appeal, and that he was unaware that his trial attorney had been sick. Regarding a conversation Wyrick had with Allen's trial counsel, the document explained that Allen's trial counsel communicated that he and Allen both "felt proud and fortunate that . . . Allen had been" placed on community supervision given the nature of the offense.

After Allen filed his application, the State filed a response summarizing the evidence presented at trial indicating that Allen committed the alleged offense, including Smith's testimony, text exchanges between Allen and Smith, evidence regarding photographs of Smith naked that Allen viewed, and the interview in which Allen made admissions about the sexual nature of his relationship with Smith. Further, the State asserted that the relief that Allen requested was barred by the doctrine of laches, highlighting that Allen did not provide any explanation for his delay in seeking an out-of-time appeal. Further, the State argued that the trial court should deny the requested relief unless Allen filed another affidavit or presented some other evidence explaining the delay. Allen did not submit any additional evidence.

Several weeks later and without convening a hearing, the trial court denied Allen's application after considering the application, the accompanying documents, the State's response, and the record from Allen's trial. The trial court issued findings of fact and conclusions of law, including the following:

1. Applicant has not shown circumstances justifying his delay in seeking relief, and his delay was not reasonable.

2. The State of Texas has been prejudiced by Applicant's lengthy delay in filing

4

his claim regarding his long-standing conviction. Witnesses involved in the instant offense likely no longer have an independent or complete recollection of the events, including the surrounding circumstances; indeed, Applicant made much of the complainant's memory issues at trial nearly a decade ago, and Applicant himself claimed memory issues in his interview.

3. Though Applicant admits he was aware of his appellate deadline nearly a decade ago, he sat on his alleged claim for nearly twice the five-year period the Court of Criminal Appeals has indicated can implicate laches.

4. The equitable doctrine of laches bars relief in this case.

5. In any event, Applicant and his claims are not credible.

Allen appeals the trial court's denial of his application for writ of habeas corpus.

## STANDARD OF REVIEW AND GOVERNING LAW

An individual convicted of a felony or misdemeanor may seek habeas "relief from an order or judgment of conviction ordering community supervision." Tex. Code Crim. Proc. art. 11.072, § 1. When a person files a writ application, he "must be, or have been, on community supervision, and the application must challenge the legal validity of . . . the conviction for which or order in which community supervision was imposed" or "the conditions of community supervision." *Id.* art. 11.072, § 2(b). When making its determination, the trial court "may order affidavits, depositions, interrogatories, or a hearing, and may rely on [its] personal recollection." *Id.* art. 11.072, § 6(b); *see also id.* art. 11.072, § 6(c) (setting out when hearing may be held "[i]f a hearing is ordered"). Appellate courts have construed this language to mean that no evidentiary hearing is required under article 11.072 when the issues can be resolved without one. *See Ex parte Salazar*, 510 S.W.3d 619, 627 (Tex. App.—El Paso 2016, pet. ref'd); *Ex parte Arjona*, 402 S.W.3d 312, 319 (Tex. App.—Beaumont 2013, no pet.); *see Ex*

5

*parte Gonzalez*, 323 S.W.3d 557, 558 (Tex. App.—Waco 2010, pet. ref'd); *Ex parte Cummins*, 169 S.W.3d 752, 757 (Tex. App.—Fort Worth 2005, no pet.).

Appellate courts review a trial court's ruling on an application for writ of habeas corpus under an abuse-of-discretion standard of review. *Ex parte Zantos-Cuebas*, 429 S.W.3d 83, 87 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Similarly, appellate courts review a trial court's decision not to convene a hearing under article 11.072 for an abuse of discretion. *Ex parte Salazar*, 510 S.W.3d at 626-27. "A trial court abuses its discretion when its ruling is arbitrary or unreasonable." *Gaytan v. State*, 331 S.W.3d 218, 223 (Tex. App.—Austin 2011, pet. ref'd). But a trial court does not abuse its discretion if its "ruling was within the zone of reasonable disagreement." *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008); *see Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002). Under that standard, appellate courts review the record evidence "in the light most favorable to the trial court's ruling." *Ex parte Nelson*, 546 S.W.3d 742, 746 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

To succeed under a post-conviction writ of habeas corpus, "the applicant bears the burden of proving, by a preponderance of the evidence, the facts that would entitle him to relief." *Ex parte Ali*, 368 S.W.3d 827, 830 (Tex. App.—Austin 2012, pet. ref'd). In habeas corpus proceedings, "[v]irtually every fact finding involves a credibility determination," and "the fact finder is the exclusive judge of the credibility of the witnesses." *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex. Crim. App. 1996). For habeas proceedings under article 11.072, "the trial court is the sole finder of fact," and appellate courts afford "almost total deference to a trial court's factual findings when supported by the record, especially when those findings are based upon credibility and demeanor." *Ex parte Ali*, 368 S.W.3d at 830. This deferential review applies even when the findings are based on affidavits rather than live testimony. *Ex parte Thompson*,

6

153 S.W.3d 416, 418 n.1 (Tex. Crim. App. 2005). "When the trial court's findings of fact in a habeas corpus proceeding are supported by the record, they should be accepted" by the reviewing court. *See Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006).

The writ of habeas corpus is an extraordinary remedy. *See Ex parte Smith*, 444 S.W.3d 661, 666 (Tex. Crim. App. 2014). "[H]abeas is governed by the elements of equity and fairness, and those elements require a consideration of unreasonable delay." *Ex parte Bowman*, 447 S.W.3d 887, 888 (Tex. Crim. App. 2014). Accordingly, the common-law doctrine of laches applies to habeas applications. *See id.*; *Ex parte Smith*, 444 S.W.3d at 666-68; *Ex parte Perez*, 398 S.W.3d 206, 215 (Tex. Crim. App. 2013); *Pastenes v. State*, No. 03-16-00102-CR, 2017 WL 2928112, at *2 (Tex. App.—Austin July 6, 2017, no pet.) (mem. op., not designated for publication). The doctrine has been defined as meaning "neglect to assert right or claim which, taken together with lapse of time and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity. Also, it is the neglect for an unreasonable and unexplained length of time under circumstances permitting diligence, to do what in law, should have been done." *Ex parte Perez*, 398 S.W.3d at 210 (quoting *Ex parte Carrio*, 992 S.W.2d 486, 487 n.2 (Tex. Crim. App. 1999)).

When determining whether laches applies, courts should "keep, at the fore, the State's and society's interest in the finality of convictions[ ] and consider the trial participants' faded memories and the diminished availability of evidence." *Ex parte Smith*, 444 S.W.3d at 666 (footnotes omitted). Laches is determined using a "sliding scale," wherein "the extent of the prejudice the State must show bears an inverse relationship to the length of the applicant's delay." *Ex parte Perez*, 398 S.W.3d at 217. The rationale for the sliding-scale approach is based

7

on the common-sense understanding that the longer a case has been delayed, the more likely it is that the reliability of a retrial has been compromised. *Id.* at 218.

In making a laches determination, "courts should consider . . . [1] the length of applicant's delay in requesting equitable relief, [2] the reasons for the delay, . . . [3] the degree and type of prejudice borne by the State resulting from applicant's delay . . . . [and 4 whether the] delay may be excused." *Ex parte Smith*, 444 S.W.3d at 667. Prejudice in this context includes "anything that places the State in a less favorable position, including prejudice to the State's ability to retry a defendant." *Id.* at 666. The State is not required "to make a 'particularized showing of prejudice.'" *Ex parte Perez*, 398 S.W.3d at 215. The trial court "may draw reasonable inferences from the circumstantial evidence to determine whether excessive delay has likely compromised the reliability of a retrial." *Id.* at 217. Trial courts may "broadly consider the diminished memories of trial participants and the diminished availability of the State's evidence, both of which may often be said to occur beyond five years after a conviction is final." *Id.* at 216. A delay may be excused if the record shows that (1) "an applicant's delay was not unreasonable because it was due to a justifiable excuse or excusable neglect"; (2) "the State would not be materially prejudiced as a result of the delay"; or (3) "the applicant is entitled to equitable relief for other compelling reasons, such as new evidence that shows he is actually innocent of the offense or, in some cases, that he is reasonably likely to prevail on the merits." *Id.* at 218; *see Ex parte Smith*, 444 S.W.3d at 667. Laches is a question of fact, and as specified earlier, the trial court is the sole finder of fact in an article 11.072 habeas proceeding. *See Ex parte Bowman*, 447 S.W.3d at 888.

8

In his sole issue on appeal, Allen contends that the trial court abused its discretion by denying his habeas application "because there was insufficient proof to establish that the doctrine of laches barred the application." Allen argues that the trial court "held no hearings and requested no affidavits on any of the issues necessary to appropriately find laches" and instead speculated "that the witnesses would no longer remember the facts relevant to the case." Moreover, Allen contends that whether the witnesses would have difficulty remembering the events in question has no bearing on his request for an out-of-time appeal because faded memories would be a relevant consideration only if he receives a new trial. Further, Allen asserts that he should have an opportunity to explain the delay in seeking an out-of-time appeal and that the State should have been required to provide evidence specifically showing how it was prejudiced by the delay. Allen also asserts that his trial attorney's failure to inform him of his appellate rights constituted ineffective assistance of counsel and that he has shown that but for his attorney not informing him of his rights, he would have appealed his conviction. For these reasons, Allen argues that this Court should reverse the trial court's order and remand the case to the trial court to allow it to hold a hearing on the matter before making a subsequent ruling.

Regarding Allen's assertion that the trial court should have held a hearing before ruling on his habeas application and that this Court should remand the case and order an evidentiary hearing regarding laches, we note, as set out above, that article 11.072 does not require a hearing before a trial court may rule on a habeas application. *See* Tex. Code Crim. Proc. art. 11.072; *Ex parte Salazar*, 510 S.W.3d at 627. Moreover, for the reasons that follow,

9

we cannot conclude that the trial court abused its discretion by making its ruling without convening a hearing. *See Ex parte Salazar*, 510 S.W.3d at 626-27.[2]

As discussed previously, the record before the trial court showed that Allen waited nearly ten years to seek an out-of-time appeal. *See Ex parte Smith*, 444 S.W.3d at 670 (observing that "[a] ten-and-a-half year delay is extraordinary"); *Ex parte Perez*, 398 S.W.3d at 216 n.12 (explaining "that delays of more than five years may generally be considered unreasonable in the absence of any justification for the delay").

Moreover, regarding the reasons for the delay and whether the delay may be excused, Allen explained in his affidavit that his trial attorney did not discuss the applicable appellate deadlines or any potential appellate issues and that had he been informed of his appellate rights, he would have timely filed a notice of appeal. However, trial courts are the factfinders in habeas proceedings under article 11.072, and the trial court here determined that

---

[2] In his brief, Allen refers to several cases from the Court of Criminal Appeals when asserting that a hearing should have been convened and that this case should be remanded for an evidentiary hearing. *See Ex parte Bowman*, 447 S.W.3d 887 (Tex. Crim. App. 2014); *Ex parte Perez*, 398 S.W.3d 206 (Tex. Crim. App. 2013). Although the Court stated in *Bowman* that "[w]e have indicated that the proper course of action" when there is nothing in the record pertaining to laches "is to remand to the trial court for a hearing on the laches issue," the Court did not state that hearings are mandatory in all cases arising under article 11.072. 447 S.W.3d at 888. Similarly, although the Court in *Perez* remanded the case, 398 S.W.3d at 219, and although the trial court elected to hold an evidentiary hearing on remand, *see Ex parte Perez*, 445 S.W.3d 719, 724 (Tex. Crim. App. 2014), the Court did not require an evidentiary hearing or otherwise indicate that an evidentiary hearing was warranted in the circumstances present here, *see Ex parte Perez*, 398 S.W.3d at 219; *see also Ex parte Davila*, 530 S.W.2d 543, 545 (Tex. Crim. App. 1975) (op. on reh'g) (explaining in habeas context that hearing was not required under article 11.07). Moreover, the procedural postures from both cases are distinguishable from the one here. *See Ex parte Bowman*, 447 S.W.3d at 888 (remanding where laches was raised for first time on appeal); *Ex parte Perez*, 398 S.W.3d at 215, 219 (remanding to allow State and applicant "to produce additional evidence" "[i]n light of [the] revised approach to the doctrine of laches" that Court of Criminal Appeals had just adopted); *see also Ex parte Smith*, 444 S.W.3d 661, 663, 667 (Tex. Crim. App. 2014) (remanding case to allow applicant to address laches after determining "that a court may *sua sponte* consider and determine whether laches should bar relief").

Allen's claims in his affidavit were not credible. *See Ex parte Fassi*, 388 S.W.3d 881, 888 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (noting "that the habeas court was free to disbelieve appellant's self-serving testimony"); *see also Kniatt v. State*, 206 S.W.3d 657, 665 (Tex. Crim. App. 2006) (explaining that "[a]n applicant's delay in seeking habeas corpus relief may prejudice the credibility of his claim").

When deciding what, if any, weight to give Allen's affidavit, the trial court was aided by the record from the underlying criminal proceeding as well as the court's memory of that proceeding. For example, during his interview with the police, Allen initially told the police that nothing improper happened, that Smith initiated most of the contact, and that she started acting "clingy," but he later admitted to having an "improper" relationship with her. Moreover, despite the extensive text history between Allen and Smith being admitted into evidence and documenting graphic sexual statements that he made to her, Allen testified during the punishment phase that she was a liar. Similarly, Allen denied having physical contact with Smith, but Allen admitted during his interview that there had been contact when she backed into him at a cheerleading competition.

In addition, when evaluating Allen's statement that he would have appealed his conviction in the hopes of receiving a new trial, the trial court could have considered the fact that Allen was placed on community supervision rather than sent to prison despite the significant evidence supporting his guilt, including his own admissions, his text messages with Smith discussing sexual topics and suggesting getting a hotel, and his viewing nude images of her. *Cf. Ex parte Torres*, No. 03-14-00169-CR, 2015 WL 2066232, at *6 n.1 (Tex. App.—Austin Apr. 29, 2015, no pet.) (mem. op., not designated for publication) (observing that habeas courts

11

evaluating claim that applicant would have insisted on trial should consider "evidence concerning the likelihood of success at trial").

Further, although the affidavit purportedly from Wyrick described Allen's trial attorney as being overwhelmed by his criminal defense cases and as having a limited understanding of criminal procedure, the trial court could have considered that the affidavit was neither signed by Wyrick nor sworn to when deciding what, if any, weight to give those statements in the document. *Cf. Evans v. State*, 628 S.W.3d 358, 365 (Tex. App.—Fort Worth 2021, no pet.) (noting that "unsworn 'contention[s]' . . . could not serve in lieu of affidavit" and did not satisfy affidavit requirement). Moreover, the trial court could have considered the portion of the document relating that Allen's trial counsel purportedly told Wyrick that Allen and his attorney were both happy with the outcome of the trial because Allen had been placed on community supervision and not sent to prison even though the conviction was for online solicitation of a minor.

Similarly, the trial court could have considered the statement attributed to Wyrick and referenced by Allen in his application explaining that Wyrick informed Allen a few months after trial that the deadline for filing an appeal had run. Additionally, the court could have considered how despite being notified of the State's laches argument made in response to the writ application, despite having an opportunity to respond or file additional evidence before the trial court ruled, and despite the State explicitly inviting Allen in its response to "file a subsequent affidavit which adequately justifies the delay" if there was an explanation, Allen provided no explanation for the nearly ten-year delay other than having not been informed about his appellate rights and did not set out any efforts that he made seeking to advance his request for an out-of-time appeal before filing the habeas application. *Cf. Ex parte Roberts*,

12

494 S.W.3d 771, 774, 776 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (concluding that laches barred relief and noting that trial counsel died after conviction and that applicant waited nearly thirteen years before filing habeas application).

Regarding prejudice, the State explained in its response that the delay impaired its ability to retry Allen should he prevail in an out-of-time appeal. Although Allen contends that this type of prejudice should not be considered here because he is currently only seeking an appeal rather than a new trial, courts consider "whether excessive delay has likely compromised the reliability of a retrial" when determining if a claim is barred by laches. *See Ex parte Perez*, 398 S.W.3d at 217; *see also id.* at 208, 210, 215 (noting applicant's argument that prejudice to State's "ability to re-try applicant is irrelevant to laches inquiry" where applicant sought to pursue out-of-time petition for discretionary review and then expanding "the definition of prejudice . . . to permit consideration of anything that places the State in a less favorable position"). Moreover, given the significant delay at issue in this case, the State's burden to produce evidence establishing prejudice is significantly lessened because of "the common-sense understanding that the longer a case has been delayed, the more likely it is that the reliability of a retrial has been compromised." *Id.* at 218.

In its response, the State noted that at trial Smith had difficulty remembering details of the offense and surrounding behavior given the delay between the actions and the trial and asserted that her memory would have diminished further during the ten-year delay. *Cf. Ex parte Perez*, 398 S.W.3d at 217 (observing that trial courts "may draw reasonable inferences . . . to determine whether excessive delay has likely compromised the reliability of a retrial"). When assessing any prejudice to the State, the trial court was free to consider its own recollections and the record from the underlying trial, and the record supports the trial court's determination that

13

the delay prejudiced the State. For example, although Smith remembered many details, she admitted that she did not remember why Allen started communicating with her by cell phone, how long they communicated before a sexual topic was discussed, when sex was discussed for the first time, how many sexually-themed conversations they had, whether they discussed oral sex, what she said in response to his suggestion that they get a hotel, how often they discussed sex, what she said in certain text messages, whose idea it was for her to take pictures of herself naked, how many times she used his phone to take pictures of herself, and how people found out about the improper communications. Additionally, Smith testified that the reason she could not remember certain details was because the incidents occurred "a long time" ago. Further, Allen focused on Smith's inability to recall details as part of his defensive strategy through his cross-examination of her.

In assessing the merits of Allen's ineffectiveness claim and his assertion that he was unaware of his appellate rights, the trial court could have considered how it discussed in front of Allen and the jury the possibility that the jury's decision could be appealed to this Court and potentially reversed. Moreover, when asserting his ineffectiveness claim below, Allen noted that he objected during the jury-charge conference to the inclusion in the charge of language from the statute in effect at the time specifying that it is not a defense that "the actor did not intend for the meeting to occur," asserting that the "anti-defensive" language is inconsistent with the portion of the statute specifying that the person must have "the intent that the minor" engage in sexual conduct. *See* Act of May 25, 2005, 79th Leg., R.S., ch. 1273, § 1, sec. 33.021(c), (d), 2005 Tex. Gen. Laws 4049, 4050 (amended 2007, 2015, and 2021) (current version at Tex. Penal Code § 33.021). Allen urged that he would have argued on appeal that the inclusion of the language constituted jury-charge error.

14

During the charge conference, Allen did object to the inclusion of the language set out above. After listening to Allen's argument, the trial court ended the hearing and instructed the State to consider whether it wanted to include that language in the charge given that the two provisions "sound[ed] contradictory to" one another. On the next day, the State informed the trial court that it did not want to include the disputed language, and that language was not included in the jury charge. *Cf. Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996) (explaining that jury is presumed to follow court's instructions as given). For these reasons, the trial court could have reasonably concluded that Allen would likely not prevail on the merits of his claims.

Having examined the relevant considerations, we conclude that the trial court did not abuse its discretion by determining that Allen's habeas claims could be resolved without convening an evidentiary hearing and that his request for an out-of-time appeal was barred by laches. *See Ex parte Becciu*, 615 S.W.3d 482, 495 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (upholding trial court's decision that laches barred relief where applicant waited seven years before filing writ application, where State showed it had been prejudiced by delay, and where applicant presented no evidence of compelling reason why laches should not apply); *Ex parte Roberts*, 494 S.W.3d at 774, 776, 777 (affirming trial court's ruling that laches barred relief where applicant "waited almost thirteen years before bringing his habeas application" and did not "provide an explanation or reason for this delay," where State has been prejudiced by delay due to loss of evidence, and where trial court could have concluded based on record that applicant would likely not prevail on merits of ineffective assistance claim).

Therefore, we overrule Allen's issue on appeal. *See Ex parte Smith*, 444 S.W.3d at 667-68 (noting that "[p]rotracted habeas corpus litigation defers convictions' finality,"

15

undermines confidence in integrity of judicial procedures, and impairs orderly administration of justice, explaining that there must be point at which conviction becomes final and at which deterrent effects of immediacy and certainty of punishment outweigh right to repeatedly appeal conviction).

## CONCLUSION

Having overruled Allen's issue on appeal, we affirm the trial court's order denying Allen's application for writ of habeas corpus.

_____
Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed

Filed:   June 15, 2022

Do Not Publish